**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

| | |
|---|---|
| WENDELL CURRIN,<br>    Plaintiff,<br>vs.<br>TIMOTHY BEAVERS, et al.,<br>    Defendants. | Case No. 3:22-cv-20350/MCR/ZCB |

**STIPULATION TO ORDER GOVERNING DISCOVERY**

The Parties Plaintiff WENDELL CURRIN and the Defendants TIMOTHY BEAVERS, DERRICK PURVIS, and WALTER GOYER, and Nonparty FLORIDA DEPARTMENT OF CORRECTIONS (FDC), have conferred and hereby jointly file this stipulation to the form of the proposed order, including stipulated points of disagreement, and state the following in support thereof:

1. On April 9, 2024, Plaintiff filed a Motion for an Order Governing Discovery to facilitate the production of both party and nonparty discovery materials.

2. On April 19, 2024, nonparty FDC responded by proposing its own Confidentiality Order which differed substantially from Plaintiff's proposal.

3. The Court ordered the parties and nonparty FDC to submit a single proposed order that demonstrated what provisions were acceptable to both parties and on what provisions the parties and nonparty FDC continued to disagree.

4. Attached as Exhibit 1 is a proposed order. The parties and nonparty FDC stipulate that this is the over-all form of the proposed order with stipulated areas of

disagreement. The Court also ordered the parties and nonparty FDC to draft a joint statement identifying each term on which the parties disagree.

## JOINT STATEMENT ON DISAGREEMENT

In order to show the placement and context of each point of disagreement, the parties and nonparty FDC show the points of disagreement in the stipulated order where they occur and will indicate their respective positions as follows:

## PLAINTIFF'S POSITION

### A. PROTECTED CATEGORIES

**Video and Photos**. Prior to 9/11, videos of uses of force in prisons were treated as public records the same as police uses of force. Section 119.071 added "Records, information, photographs, audio and visual presentations, schematic diagrams, surveys, recommendations, or consultations or portions thereof relating directly to the physical security or firesafety of the facility or revealing security or firesafety systems;" Fla. Stat. § 119.071(3)(a)1.a. Thus, it is clear that legal concerns about video have to do with security. A tight frame a video of an officer punching or kicking an inmate or of an inmate emerging from a cell extraction with bleeding facial wounds without showing security infrastructure should not receive special protection. The mere fact that video or photographs are taken within prison walls are not sufficient reason to impose secrecy. For instance, if an inmate is accused of striking an officer, the inmate may have his knuckles photographed within the

2

prison. Prison staff may photograph injuries for medical reasons. As long as they don't portray security infrastructure, they should not be treated specially.

**Photographs**. Here, FDC would give special protected status to all photographs without exception, whether taken inside or outside an institution. Photos taken of an inmate in a hospital bed or showing family functions to document a decedent's relationship with survivors in a wrongful death case would qualify.

**Inspector General records**. These are records that are supposed to tell the story of an alleged constitutional abuse. As authorized investigations, their conclusions may be admissible. To impose secrecy on these records would create an intractable problem in telling the story. They are full of details that may be material to claims or defenses of either side. There may be a basis for seeking protection of some facet of the reports but these should by justified on a "good cause" basis.

## B. REDACTIONS

FDC redactors, often OPS staff, are trained to redact for release as public records. The fact that the parties are governed by a non-dissemination order should ensure that the records will not enter the public realm. We see whole paragraphs and even whole pages redacted. So to release records that are redacted under Public Records statutes can easily render them valueless as evidence. Moreover, parties find it hard to argue for more limited redaction because they don't know what is under the black marker. The detail below is from ECF 107-2 in this case. The exhibit dealt with redactions that purported to include protected health information (PHI). But as a practical matter, the recipient of the production does not know what the redacted

subject matter is. If redaction is truly necessary, evidence should be produced unredacted and redacted only prior to filing or admission at a hearing or at trial. Plaintiff would agree to minimal redaction such as that required by Fed.R.Civ.P. 5.2.



### C. QUALIFIED PERSONS

FDC would define "parties" as the parties' counsel, and not the parties themselves, as a means of preventing a prisoner plaintiff from being treated as a "qualified person" for purposes of having access to evidence. As the Court pointed out, under this definition of "qualified person," a prisoner who was a deponent could see evidence that a prisoner who was a plaintiff could not. This provision does violence to the English language and logic; when is a party not a party?

### D. PLAINTIFF'S ACCESS TO EVIDENCE

This is a more direct assault on a prisoner plaintiff's access to evidence. The prisoner who remains *pro se* would see the evidence for himself or herself but the prisoner who has a lawyer cannot. All plaintiffs' lawyers are not diligent or insightful enough to totally substitute his or her perspective or judgment for that of a client who lives the reality of prison life. FDC would agree that a prisoner can see a video or a photograph of an officer for purposes of identification but not the language of a policy that may bear directly on the plaintiff's case. For instance, this attorney had a case where a transport officer pulled the prison van to the side of the road and entered the prisoner cage and beat the inmate. Those actions were completely

4

contrary to the published FDC policy (the officer involved trained other officers on the policy). Under FDC's proposed rule, a prisoner can't see that policy since the transport policy is restricted.

## DEPARTMENT OF CORRECTIONS' POSITION

FDC maintains that its requested additions/ revisions to the proposed order are necessary in order to protect the essential security concerns posed when allowing a prisoner access to confidential material. Plaintiff's requests in this case represent a material deviation from standard long standing practice. Plaintiff's counsel has given FDC no reason for seeking this deviation, grounded in the specific needs of this case.

### A. PROTECTED CATEGORIES

**Video and Photographs**

Plaintiff wishes to limit video restrictions, ostensibly including the prohibition against publication, to just that video which shows security *infrastructure*. However, as a practical matter, more than just the infrastructure of a prison may contain sensitive security information that could potentially impact the ability to run prisons safely and securely. For example, the layout of the interior itself, the position of officers, the timing of rounds, text on sensitive documents, the inputting of protected codes and logins could all potentially be captured on film. In fact, security inures to every facet of prison life, as this is the primary business of such institutions. Therefore, the burden of whether or not video should be released should remain in favor of protective restriction. The burden on FDC, should it need to scour every

5

video with the same intense attention and motivation of the criminally minded for potentially compromising material would prove far too onerous.

An argument similar to Plaintiff's was advanced in the Johnson case, where the Plaintiff sought to have fixed wing camera footage filed openly and not under seal. *Johnson v. Massey*, 4:20CV410-MAF, 2023 WL 5316480, at *1 (N.D. Fla. July 7, 2023). Of the security concerns implicated, there the court said:

> Although a prison "does not hold any national" security interests as argued by Plaintiff, there are security interests at issue. Knowing the internal structure of a particular prison facility presents several different types of threats to the security of the prison, including escape. That is so even if it is "a small portion of" the prison. See ECF No. 121 at 2-3. For that reason, courts routinely seal the filing of videos taken within a correctional facility […] because fixed wing videos almost always provide an interior view of a prison wing or housing unit, the videos will be sealed at the outset to protect the security of the prison.

*Id*.

Plaintiff also argues that FDC's position that photographs should be protected is overbroad. Plaintiff alludes to fact patterns that are not currently at issue. This protective order is about this specific case and the specific security concerns now in play. Furthermore, the presumption that photos should be protected is equally supported by the arguments above regarding video. Photos may contain information

6

the withholding of which from an inmate or the public is essential to the safe maintenance of the prisons. Photos can furthermore contain the PHI of individuals not otherwise covered by the HIPAA order. Therefore, access to picture is properly constrained in the way that the FDC seeks.

### B. REDACTIONS

With regard to redactions, Plaintiff argues that sometimes records are produced with redactions consistent with public records requests without any assertion that this has happened in the present matter or any evidence that it will happen. The pictorial example provided by plaintiff is believed to be from a different case. As such, at this point, the argument is entirely hypothetical. In fact, the discovery requested has not been prepared in the same manner as a public records requests and where relevant PHI or security related matters will be protected by court order, these have been left unredacted. In fact, in the records that have already been produced, FDC has consented to review areas of purported over-redaction and has agreed to unredact where this has occurred. Only that material which still represents a security concern or other privacy issue not anticipated to be covered by court order has additionally been redacted. Examples include documentation of an unrelated PREA complaint, including victim information, and unrelated medical data for hundreds of other inmates, both of which were caught with the search terms employed in the requested email search. Accordingly, Plaintiff is correct that sometimes whole pages are redacted; this is an unavoidable necessity.

The essence of the contention between Plaintiff and FDC is whether FDC should be limited to redactions of the specific items on the list provided by Plaintiff, such as confidential employee identifiers. FDC is unwilling to consent to such a list as it unduly impedes the flexibility FDC requires to comport with the various policies and laws weighing on the myriad security and privacy concerns potentially at issue. Again, the protections FDC seeks have no deleterious impact on Plaintiff's ability to pursue his case as FDC is not attempting to withhold pertinent, adequately protected information.

### C. QUALIFIED PERSONS

Here Plaintiff takes issue with being excluded as a party from the agreement, though a party to the case. Plaintiff claims this does violence to the English language; so too must every suit sounding in contract as these routinely distinguish between parties to a suit and parties to an agreement. The ontological leap at stake in the present agreement asks no more than such suits. FDC cannot agree to Plaintiff himself being defined as a party to the confidentiality agreement as this serves to provide greater rights and access to the protected information. Again, it is yet another attempt at shifting burdens in a way that favors unsafe practices and the loosening of security. Recasting an inmate as a party to the agreement is a step toward undermining the entire purpose necessitating the agreement in the first place.

### D. PLAINTIFF'S ACCESS TO EVIDENCE

Here Plaintiff states that seeing the language of a restricted policy may help prove his case. However, again, this is entirely hypothetical. The potential is further

outweighed by the certain havoc that would be menaced if an inmate were to have unrestricted access to policy information kept confidential for the sake of the safety and well-being of both inmates and staff. The primary purpose of the agreement is to protect sensitive matters that are dangerous or inappropriate for a confined person to have access to. Where exceptions are truly necessary in the interest of justice, Plaintiff is free to confer with FDC and seek compromise or failing all else seek redress from the Court.

## DEFENDANTS' POSITION

Defendants adopt the position of the Florida Department of Corrections. Respectfully Submitted, May 17, 2024.

/s/*Michele Bachoon*
MICHELE T. BACHOON, ESQ.
Florida Bar Number 7412
Walton Lantaff Schroeder & Carson LLP
551 NW 77th Street, Suite 204
Boca Raton, FL 33487
Phone: (561) 689-6700
mbachoon@waltonlantaff.com

*Attorneys for Defendants*

/s/*Christine Wolfe*
CHRISTINE WOLFE, ESQ.
Florida Department of Corrections
501 South Calhoun Street
Tallahassee, FL 32399-2500
850-717-3609
CourtFilings@fdc.myflorida.com
Christine.Wolf@fdc.myflorida.com

*For Florida Department of Corrections*

/s/ *James Cook*
JAMES V. COOK, ESQ.
Florida Bar Number 0966843
Law Office of James Cook
314 West Jefferson Street
Tallahassee, FL 32301
(850) 222-8080; 561-0836 fax
cookjv@gmail.com

/s/ *Joshua Tarjan*
JOSHUA TARJAN (FBN 107092)
The Tarjan Law Firm P.A.
12372 SW 82 Avenue
Pinecrest, FL 33156
josh@tarjanlawfirm.com
Tel. (305) 423-8747

*Attorneys for Plaintiff*